**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LARNADO PITTMAN, <br><br>            Plaintiff, <br><br> v. <br><br> GURBIR S. GREWAL, in his official capacity as Attorney General of the State of New Jersey, CAROLE A. JOHNSON, in her official capacity as Commissioner, and within the scope of her authority and Office of the Department of Human Services, Division of Family Development, Office of Child Support Services, and NATASHA JOHNSON, in her official capacity as Director and Assistant Commissioner, and within the scope of her authority and office of the Department of Human Services, Division of Family Development, Office of Child Support Services, <br><br>            Defendants. | Civil Action No. 20-06696 (FLW) <br><br> **OPINION** |

**WOLFSON, Chief Judge:**

*Pro se* Plaintiff Larnado Pittman ("Plaintiff" or "Pittman") brings this action for declaratory and injunctive relief against defendants Gurbir S. Grewal, the former Attorney General of the State of New Jersey,[1] Commissioner of the Department of Human Services Carole A. Johnson ("Commissioner Carole Johnson"), and Assistant Commissioner of the Department of Human Services Natasha Johnson ("Commissioner Natasha Johnson") (collectively, "Defendants"), alleging violations of the U.S. and New Jersey Constitutions. Plaintiff maintains that two state statutes, N.J.S.A. 2A:34-23(a) and N.J.S.A. 2A:17-56.67, violate his rights to equal

---

[1] Grewal is no longer the Attorney General. Accordingly, the Acting Attorney General, Matthew J. Platkin ("Attorney General Platkin"), is automatically substituted. Fed. R. Civ. P. 25(d).

protection and due process by authorizing courts to award support for post-secondary educational expenses against divorced parents but not against those who are still married. Plaintiff brings his federal constitutional claims pursuant to 42 U.S.C. § 1983, and the state-law claims are based on alleged violations of Articles I and VIII of the New Jersey Constitution.

Before the Court are two separate motions to dismiss (the "Motions") filed by former Acting Attorney General Andrew J. Bruck, *see* ECF No. 40,[2] and Commissioner Natasha Johnson and Commissioner Carole Johnson, *see* ECF No. 39. Defendants move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim pursuant to Rule 12(b)(6). Plaintiff opposes the Motions.[3]   For the reasons that follow, Defendants' motions to dismiss are **GRANTED**. Plaintiff's claims under the U.S. Constitution are dismissed for failure to state a claim, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. As set forth in the Order accompanying this Opinion, Plaintiff may refile his state-law claims in state court in accordance with 28 U.S.C. § 1367(d) and *Artis v. District of Columbia,* 138 S. Ct. 594 (2018).

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of these Motions, the Court takes as true all allegations in Plaintiff's Second Amended Complaint. ECF No. 28, Second Amended Complaint ("SAC").

Under New Jersey law, "a child support obligation shall terminate by operation of law without order by the court when a child reaches 19 years of age unless," *inter alia*, "a written

---

[2] Bruck was the Acting Attorney General when the motion was filed, and Attorney General Platkin subsequently replaced Bruck on February 14, 2022.

[3] Plaintiff filed a "Cross Motion" in response to Defendants' Motions, ECF No. 41, but he did not file a formal opposition. However, in substance, Plaintiff's "Cross Motion" is an opposition to Defendants' Motions, and the Court construes that filing as Plaintiff's Opposition. After Defendants filed their Reply briefs, Plaintiff also filed a "Reply Opposition." ECF No. 44.

request seeking the continuation of child support services is submitted to the court by a custodial parent prior to the child reaching the age of 19 . . . and such request is approved by the court." N.J.S.A. 2A:17-56.67(a)(3). The statute further provides that "[i]n response to a notice of proposed termination of child support[,] . . . a custodial parent may submit a written request . . . seeking the continuation of child support services beyond the date the child reaches 19 years of age" when, *inter alia*, "the child is a student in a post-secondary education program and is enrolled for the number of hours or courses the school considers to be full-time attendance during some part of the academic year." N.J.S.A. 2A:17-56.67(b)(1)(b). "In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed," courts generally must consider, among other factors, the "[n]eeds of the child," the "[s]tandard of living and economic circumstances of each parent," the "[e]arning ability of each parent," and the "[n]eed and capacity of the child for education, including higher education." N.J.S.A. 2A:34-23(a).

On April 22, 2020, the Superior Court of New Jersey entered an order against Plaintiff, a noncustodial parent, continuing Plaintiff's child support obligations to his daughter until May 5, 2023. *See* SAC p. 3 ¶ 1; SAC Ex. A. At that time, Plaintiff's daughter was approaching 19 years old, and her mother had requested a continuation of Plaintiff's support obligations pursuant to N.J.S.A. 2A:17-56.67(b)(1)(b). *See* SAC Ex. A. The Superior Court awarded the continuation based on the child's full-time enrollment in a post-secondary education program. *See id.*

Plaintiff filed an initial Complaint on June 1, 2020, alleging that the statutes pursuant to which the Superior Court issued its continuation award violate the U.S. and New Jersey Constitutions. ECF Nos. 1, 8. On September 9, 2020, Defendants filed a joint motion to dismiss the original complaint, arguing, in part, that the Court lacked subject matter jurisdiction pursuant to Rule 12(b)(1). In addition, the named Plaintiffs, who at the time consisted of Pittman, Giovanni

LoPresti, and Nino Calabrese (collectively, "Plaintiffs"), filed a cross-motion, consenting to the removal of Governor Philip Murphy as a named defendant in this action; requesting that former Attorney General Grewal be designated as an Interested Party, rather than a named defendant; and further requesting that Commissioner Natasha Johnson, in her official capacity as Director of the Department of Human Services, Division of Family Development, be added as a defendant. *See* ECF No. 20 ("Plaintiffs' Cross-Motion") ¶¶ 2–8. In a Letter Order dated April 13, 2020, *see* ECF No. 27, the Court granted Defendants' motion to dismiss and denied Plaintiffs' cross-motion as moot. Specifically, the Court found that Plaintiffs had not established standing to pursue their claims. Nonetheless, the Court provided Plaintiffs an opportunity to amend their Complaint and advised them that, should they wish to add or remove parties to this action, they must do so in their amended pleading.

On May 5, 2021, Pittman filed the SAC,[4] alleging that N.J.S.A. 2A:17-56.67 and N.J.S.A. 2A:34-23(a) are unconstitutional, both facially and as applied. *See* SAC p. 28 ¶ 1. In Counts Two and Four, Plaintiff contends the statutes violate the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution by requiring divorced parents to finance their children's post-secondary education past the age of majority when no such requirement applies to parents with "intact" marriages. *See, e.g.*, *id.* pp. 2–3, 20–22, 28–35. In Counts One and Three, Plaintiff asserts that the statutes violate the Due Process Clause of the Fourteenth Amendment by denying noncustodial parents their "fundamental right to control the education of their children." *Id.* pp. 16–20, 23–28. In Counts Two and Three, Plaintiff alleges that the statutes violate Articles I and VIII of the New Jersey Constitution, largely on the same grounds as his federal claims. *Id.* pp. 20–

---

[4] In his Cross Motion, Plaintiff notes that Calabrese and LoPresti both voluntarily withdrew their claims, ECF No. 41 p. 5 ¶ 5, and they are not named as plaintiffs in the SAC. As such, Pittman is the only remaining plaintiff.

28. And in Count Five, Plaintiff alleges that because the statutes are unconstitutional, they are void pursuant to *Cooper v. Aaron*, 358 U.S. 1 (1958).

On July 22, 2021, Defendants timely filed their motions to dismiss. ECF Nos. 39, 40. Plaintiff filed his "Cross Motion" in response to Defendants' Motions on July 21, 2021, ECF No. 41, and Defendants filed Reply briefs on August 6 and 9, 2021. ECF Nos. 42, 43. Plaintiff then filed his "Reply Opposition" on August 10, 2021. ECF No. 44.

## II.   LEGAL STANDARD

### A.   Fed. R. Civ. P. 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a claim if there is no subject matter jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). A Rule 12(b)(1) motion can raise a facial attack or a factual attack, which determines the standard of review. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citations omitted); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). On a facial attack, courts "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," since the motion contests the sufficiency of the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (quotations omitted); *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

On a factual attack, courts may "consider evidence outside the pleadings," such as affidavits, since the motion contests the underlying basis for jurisdiction. *Gould Elecs. Inc.*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the

trial court from evaluating for itself the merits of jurisdictional claims."); *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) ("[A] factual attack concerns the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites.") (quotations and citation omitted). In such circumstances, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," *Mortensen*, 549 F.2d at 891, but "must be careful [ ] not to allow its consideration of jurisdiction to spill over into a determination of the merits of the case, and thus must tread lightly." *Kestelboym v. Chertoff*, 538 F. Supp. 2d 813, 815 (D.N.J. 2008) (quotations and citation omitted). The proponent of jurisdiction bears the burden to prove that it exists throughout the litigation. *Mortensen*, 549 F.2d at 891.

   **B.      Fed. R. Civ. P. 12(b)(6)**

   In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotations and citation omitted). A complaint need not contain detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' [pursuant to Rule 8(a)] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard under *Twombly* and *Iqbal*, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *Id.* Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Here, Plaintiff is proceeding *pro se*. "The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 52021 (1972). "Courts are to construe complaints so as to do substantial justice, keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (quotations and citations omitted). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). In that regard, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282.

### III.    DISCUSSION

Defendants move to dismiss the SAC on three grounds: first, they contend that the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine, requiring dismissal pursuant to Rule 12(b)(1); second, they contend that the Court ought to abstain under *Younger v. Harris*, 401 U.S. 37 (1971); and third, they move to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Contrary to Defendants' position, the *Rooker-Feldman* doctrine does not deprive this Court of subject matter jurisdiction, and *Younger* abstention is not appropriate in these circumstances. However, Plaintiff has failed to state a claim under the Fourteenth Amendment of the U.S. Constitution, and his claims under federal law are therefore dismissed. As set forth herein, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, which, in turn, are dismissed without prejudice.

### A.    *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine 'bars federal district courts from exercising appellate jurisdiction over state court actions." *Geness v. Cox*, 902 F.3d 344, 360 (3d Cir. 2018) (quoting *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 342 F.3d 242, 256 (3d Cir. 2003)). But "[t]his 'narrow doctrine . . . applies only in limited circumstances.'" *Id.* (quoting *Lance v. Dennis*, 546 U.S. 459, 464–66 (2006)). A federal court lacks jurisdiction under the *Rooker-Feldman* doctrine only in "'[1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments.'" *Malhan v. Sec'y of U.S. Dep't of State*, 938 F.3d 453, 458 (3d Cir. 2019) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)).

*Rooker-Feldman* is inapplicable here because Plaintiff is not seeking "'district court review and rejection of [a state-court] judgment[],'" *Malhan*, 938 F.3d at 458 (quoting *Exxon*, 544 U.S. at 291), as Supreme Court precedent defines that element. Although "a state-court decision is not reviewable by lower federal courts, . . . a statute or rule governing the decision may be challenged in a federal action." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). In *Skinner*, the petitioner sought relief in federal court following state-court decisions denying the petitioner's request for post-conviction DNA testing pursuant to a Texas statute. *Id.* at 527–29. The petitioner brought claims pursuant to 42 U.S.C. § 1983, alleging that the state statute upon which the state courts based their decisions "violated his Fourteenth Amendment right to due process by refusing to provide for the DNA testing he requested." *Id.* at 529. *Skinner* held that *Rooker-Feldman* did not bar jurisdiction over the petitioner's federal claim because he did "not challenge the adverse [state court] decisions themselves." *Id.* at 532. Rather, he "target[ed] as unconstitutional the Texas statute [the state court decisions] authoritatively construed." *Id.* Similarly, here, Plaintiff does not directly challenge the state-court order requiring that he contribute to his child's post-secondary education expenses. SAC p. 6 ¶ 5. Instead, he brings a constitutional challenge against the statutes pursuant to which the state court issued its support order. *Id.* Accordingly, under *Skinner*, the *Rooker-Feldman* doctrine does not bar jurisdiction over Plaintiff's claims.

## B.     *Younger* Abstention

"To promote comity between the national and state governments," the *Younger* abstention doctrine "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings." *Malhan*, 938 F.3d at 461 (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77–78 (2013)). "*Younger* abstention operates as an exception to a federal court's 'virtually unflagging' obligation to hear and decide cases over which it has jurisdiction." *Silver v. Court of*

*Common Pleas of Allegheny Cty.*, 802 F. App'x 55, 58 (3d Cir. 2020). As such, "*Younger* applies to only 'three exceptional categories' of proceedings: (1) 'ongoing state criminal prosecutions'; (2) 'certain 'civil enforcement proceedings'; and (3) 'pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Malhan*, 938 F.3d at 462 (quoting *Sprint*, 571 U.S. at 78–79). If any such proceeding is at issue, before abstaining courts must determine that there are (1) "ongoing state proceedings that are judicial in nature," (2) that "the state proceedings . . . implicate important state interests," and (3) that "the state proceedings . . . afford an adequate opportunity to raise federal claims." *Silver*, 802 F. App'x at 58–59 (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Here, the first two *Younger* categories identified in *Sprint* do not apply, and Defendants do not contend otherwise. Plaintiff's claims do not involve a criminal prosecution. Nor do they "challenge a civil enforcement proceeding 'akin to a criminal prosecution in important respects.'" *Malhan*, 938 F.3d at 463 (quoting *Sprint*, 571 U.S. at 79). "[Plaintiff's former spouse], not the State, began the family court case," and "[t]he case has not sought to sanction [Plaintiff] for wrongdoing, enforce a parallel criminal statute, or impose a quasi-criminal investigation." *See Malhan*, 938 F.3d at 463. Rather, Defendants maintain that *Younger* abstention applies because these proceedings purportedly "'involv[e] certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Id.* at 462 (quoting *Sprint*, 571 U.S. at 78–79).

Contrary to Defendants' position, this case does not fall within the third category identified in *Sprint*. *Malhan* rejected arguments similar to those Defendants advance here. The plaintiff in *Malhan* was subject to a family court order imposing child and spousal support obligations, from which he subsequently sought a reduction after winning joint custody of his child, but the family

court postponed awarding a reduction until a judgment of divorce became final. 938 F.3d at 456. For reasons that are not relevant here, the plaintiff temporarily stopped paying his support obligations, after which the family court issued an order garnishing his wages. *Id.* The plaintiff then filed a complaint against several New Jersey state officials, and as relevant here, one count alleged that the failure to "permit . . . offsets to his child and spousal support debt" violated due process. *Id.* at 456–57. In addressing whether *Younger* abstention applied, *Malhan* acknowledged that, consistent with the third *Sprint* category, this claim "attack[ed] judicial orders, or at least the debt that has resulted from them." *Id.* at 463. However, *Malhan* concluded that the "orders (or that debt) [we]re not 'uniquely in furtherance' of judicial functions" because "[t]hey do not ensure that family courts can perform their functions—they are merely the output of those functions." *Id.* *Malhan* also distinguished the child and spousal support orders at issue there from the types of state court proceedings to which *Sprint*'s third category applies. For example, in *Juidice v. Vail*, 430 U.S. 327 (1977), the Court held that *Younger* abstention applied in circumstances where a state court instituted contempt proceedings against a defendant who had failed to satisfy a state-court money judgment. *Id.* at 328–30. *Malhan* reasoned that *Juidice* did not require abstention because the child and spousal support orders at issue in *Malhan* "were rather like the money judgment[] . . . in *Juidice*," not the contempt order that was "separate from the merits" and provided the basis for abstention. 938 F.3d at 463.

Following *Malhan*, abstention under *Younger* is not appropriate in these circumstances. In *Malhan*, the state court's support orders—and its continued enforcement of those orders notwithstanding the plaintiff's attainment of joint custody—did "not ensure that family courts can perform their functions" but were rather "merely the output of those functions." *Id.* Similarly, the support order underlying Plaintiff's claim here is "merely an output," *id.*, of the state court's

judicial function pertaining to the enforcement of child and spousal support. Unlike the contempt order in *Juidice*, which "lies at the core of the administration of a State's judicial system," 430 U.S. at 335, the support order at issue here "do[es] not *ensure* that family courts can perform their functions." *Malhan*, 938 F.3d at 463; *cf. Silver*, 802 F. App'x at 58–59 (concluding that a "gag order" prohibiting litigants and attorneys involved in a custody dispute from making certain public statements qualified as "an order uniquely in furtherance of a state court's ability to perform judicial functions" because it "[sought] to preserve the state court's power to further . . . its uniquely judicial function[]" of "protecting the best interests of a child whose custody had been previously adjudicated by the court"). It is merely an exercise of that function, which according to *Malhan* does not fall within *Sprint*'s third category. *See* 938 F.3d at 463. For these reasons, it is not appropriate to abstain under *Younger*.

### C.      Claims Under Federal Law

Plaintiff asserts claims pursuant to section 1983 for violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment. For the reasons set forth herein, Plaintiff fails to state a claim under either provision, and his claims asserting such violations in Counts One, Two, Three, and Four are dismissed.[5]

#### 1.      *Legal Standards*

##### a)      Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. To state a claim under the Equal Protection Clause, Plaintiff must show (1) that the

---

[5] Plaintiff's claim in Count Five under *Cooper v. Aaron*, 358 U.S. 1 (1958), is premised on his claims that the challenged statutes violate the U.S. Constitution. Because he fails to state a claim under the U.S. Constitution, Count Five is dismissed as well.

challenged law intentionally "treat[s] [him] differently from a similarly situated party," and (2) that the government's "explanation for the differing treatment does not satisfy the relevant level of scrutiny." *Real Alts., Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 348 (3d Cir. 2017) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985)); *Hassan v. City of New York*, 804 F.3d 277, 294–95 (3d Cir. 2015). Plaintiff may establish "intentional" discrimination by demonstrating that the law is "facially discriminatory" insofar as it "singles out" a particular group "'by its own terms . . . for different treatment.'" *Hassan*, 804 F.3d at 294 (quoting 3 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 18.4 (10th ed.2012)).

Where a law applies "a 'quasi-suspect' or 'suspect' classification," it "must survive 'intermediate scrutiny' or 'strict scrutiny.'" *Hassan*, 804 F.3d at 298–99 (quoting *Clark v. Jeter*, 486 U.S. 456, 461 (1988)). To survive strict scrutiny, which applies to "suspect" classifications such as "race and nationality," the law must "be 'narrowly tailored . . . [to] further [a] compelling governmental interest[ ].'" *Id.* at 299 (quoting *Gratz v. Bollinger*, 539 U.S. 244, 270 (2003)). Intermediate scrutiny, which applies to "to quasi-suspect classes like gender and illegitimacy[,] . . . . requires that a classification 'be substantially related to an important governmental objective.'" *Id.* at 298–99 (quoting *Clark*, 486 U.S. at 461).

"[A] classification neither involving fundamental rights" or liberty interests protected under the Due Process Clause, nor a suspect or quasi-suspect class, is subject to rational basis review. *See Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). "The threshold for upholding distinctions in a statute under rational-basis review is extremely low . . . ." *United States v. Pollard*, 326 F.3d 397, 408 (3d Cir. 2003). It requires only "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller*, 509 U.S. at 320; *Cabrera v. Att'y Gen.*, 921 F.3d 401, 404 (3d Cir. 2019). "The legitimate purpose 'may be based on rational

speculation unsupported by evidence or empirical data.'" *Cabrera*, 921 F.3d at 404 (quoting *FCC v. Beach Commc's, Inc.*, 508 U.S. 307, 313 (1993)). And unlike laws subject to heightened scrutiny, "rational-basis review 'confers a presumption of validity on legislation'" that the challenger must rebut. *Cabrera*, 921 F.3d at 404 (quoting *Real Alts., Inc.*, 867 F.3d at 348). To do so, the challenger must "negate every conceivable justification for the classification in order to prove that [it] is wholly irrational." *Brian B. ex rel. Lois B. v. Pa. Dep't. of Educ.*, 230 F.3d 582, 586 (3d Cir. 2000).

b)    Due Process Clause

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "[T]he Due Process Clause contains both a procedural and substantive component," *American Express Travel Related Servs, Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012), and here, Plaintiff raises only a substantive due process challenge. "Substantive due process contains two lines of inquiry: one that applies when a party challenges the validity of a legislative act, and one that applies to the challenge of a non-legislative action." *Id.* This case involves a challenge to the validity of a state law, as Plaintiff emphasizes that he is challenging "the underlying . . . constitutionality of New Jersey's Post Majority Support Laws" and is "not [directly] attacking [the] State Post Majority Support Order" issued against him. *See* SAC p. 2 ¶ 1; p. 6 ¶ 5.

"'The first step in any substantive due process review is to determine the standard of review.'" *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997) (quoting *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 643–44 (3d Cir.1995)). "Where fundamental rights or interests are involved, a state regulation limiting these fundamental rights can be justified only by a compelling state interest and legislative enactments must be narrowly drawn to express only the legitimate

state interests at stake." *Alexander*, 114 F.3d at 1403; *Heffner v. Murphy*, 745 F.3d 56, 79 (3d Cir. 2014) (rational basis test applies "[u]nless a legislative enactment abridges 'certain fundamental rights and liberty interests'") (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). If no "fundamental rights" or "liberty interests" are involved, "a more lenient 'rational basis' inquiry" applies. *Heffner*, 745 F.3d at 79 (citing *Roe v. Wade*, 410 U.S. 113, 173 (1973)) (quotations omitted).

### 2.     Applicable Form of Scrutiny

Because Plaintiff's claims under the Equal Protection and Due Process Clauses ultimately require analysis under the same form of scrutiny, I will analyze them together. With respect to Plaintiff's equal protection claim, Defendants do not dispute that the laws in question adopt "a classification based on the parent's marital status," *see* ECF Nos. 39-1 at 27, 40-1 at 26, and I agree that such a classification is apparent from the face of the statutes. *See, e.g.*, N.J.S.A. 2A:17-56.67(a)(3) (permitting only a "custodial parent" to seek a continuation of child support). As such, Plaintiff has satisfied the first element of an equal protection claim. Under Plaintiff's equal protection and due process claims, the Court next must determine the appropriate level of scrutiny.

With respect to the form of scrutiny applicable to Plaintiff's equal protection claim, there does not appear to be any meaningful dispute that divorced parents do not qualify as a suspect or quasi-suspect class, and Plaintiff does not assert as much in his Complaint or opposition briefs. Suspect classes are those, such as "race or national origin," that are "'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976) (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973)). There is no evidence that divorced parents bear any of

these "traditional indicia of suspectness." *Rodriguez*, 411 U.S. at 28; *see also In re Marriage of Kohring*, 999 S.W.2d 228, 232 (Mo. 1999) (concluding that "unmarried, divorced, or legally separated parents" do not "constitute a suspect class"); *In re Marriage of McGinley*, 172 Or. App. 717, 734–35 (2001) (concluding "that divorced parents of children attending school are not a suspect class for purposes of the Equal Protection Clause").

Nevertheless, with respect to both his equal protection and due process claims, Plaintiff contends that heightened scrutiny applies because the laws allegedly infringe "fundamental rights." *See, e.g.*, SAC p. 38 ¶ 1. "For a putative right to be 'fundamental' under the Due Process Clause, it must be 'deeply rooted in this Nation's history and tradition'" or "'implicit in the concept of ordered liberty.'" *Holland v. Rosen*, 895 F.3d 272, 293 (3d Cir. 2018) (quoting *Lutz v. City of York, Pa.*, 899 F.2d 255, 267 (3d Cir. 1990)). The Supreme Court also requires "a 'careful description' of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). Because "'extending constitutional protection to an asserted right or liberty interest'" largely "'place[s] the matter outside the arena of public debate and legislative action,'" courts must "'exercise the utmost care . . . lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences'" of the members of the judicial branch. *McCurdle v. Dodd*, 352 F.3d 820, 826 (3d Cir. 2003) (quoting *Glucksberg*, 521 U.S. at 720).

Within this framework, "the Due Process Clause protects certain narrowly defined fundamental rights of parents in their relationships with their children." *McCurdle*, 352 F.3d at 826. The "parental liberty interest as defined by the Supreme Court . . . concerns the right of parents to make critical child-rearing decisions concerning the care, custody, and control of minors." *Id.* at 829 (citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000)); *see also Troxel*, 530 U.S. at 65, 72 (holding that a statute granting visitation rights of grandparents to minor children

unconstitutionally interfered with a mother's "fundamental right to make decisions concerning the care, custody, and control of her two daughters"). That interest encompasses the right "to direct the education and upbringing of one's children." *Glucksberg*, 521 U.S. at 720; *Meyer v. Nebraska*, 262 U.S. 390, 399–401 (1923) (holding that the Due Process Clause protects the right of parents to "establish a home and bring up children" and "to control the education of their own"); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35 (1925) (acknowledging the rights of parents "to direct the upbringing and education of children under their control").

Here, Plaintiff has failed to demonstrate that the challenged laws burden a fundamental right or liberty interest. Contrary to Plaintiff's position, the laws do not implicate his parental interest in making "critical child-rearing decisions concerning the care, custody, and control" of his child, or in "direct[ing] [her] education and upbringing." *McCurdle*, 352 F.3d at 826; *Glucksberg*, 521 U.S. at 720. A custodial parent may obtain continued child support services after a child turns 19-years old when, *inter alia*, "the child is a student in a post-secondary education program and is enrolled for the number of hours or courses the school considers to be full-time attendance." N.J.S.A. 2A:17-56.67(b)(1). Continued child support is therefore available only after the child has decided to attend, and enrolled in, an eligible educational program. There is no decision left to make regarding the level of education the child will pursue or the program she will attend. The only remaining decision is whether, and the extent to which, her parents will fund her education. Thus, following the Supreme Court's requirement that courts must "'careful[ly] descri[be]' the asserted fundamental liberty interest," *Glucksberg*, 521 U.S. at 721, the right Plaintiff seeks to assert here concerns a parent's decision not to contribute financially to a post-secondary educational program his child has decided to pursue.

Such a parental decision does not qualify as a fundamental right or liberty interest protected under the Due Process Clause. As a threshold matter, *McCurdle* held that the parental liberty interest does not "extend . . . into . . . a child's adulthood." 352 F.3d at 829–30. "In most cases, the point at which a child legally becomes an adult may be established by the presumed state age of majority," *id.* at 830, which in New Jersey is 18 years old. *See* N.J.S.A. 2A:4A-22(b). Given that the continuation order issued against Plaintiff is available only once a child turns 19-years old, N.J.S.A. 2A:17-56.67(a), Plaintiff's daughter was evidently at least 18-years old when he filed his initial complaint. And while *McCurdle* noted that "there may be rare instances where the more flexible concept of emancipation more appropriately fits the parent-child relationship at issue," 352 F.3d at 830, Plaintiff does not advance any argument that emancipation is the appropriate standard here.

Even assuming Plaintiff's daughter does not qualify as an adult for purposes of the parental liberty interest under *McCurdle*, a "father has no legitimate right and certainly no liberty interest in avoiding financial obligations to his natural child that are validly imposed by state law." *Rivera v. Minnich*, 483 U.S. 574, 580 (1987). In *Rivera*, a putative father challenged a state law under which a preponderance of the evidence standard governed proceedings to determine paternity. *Id.* at 575–76. The father argued that the heightened clear and convincing evidence standard applicable in proceedings to terminate a parent-child relationship ought to apply in proceedings to establish paternity as well. *Id.* at 579. However, the Supreme Court rejected this argument based on "legitimate and significant distinctions between termination and paternity proceedings." *Id.* at 579–80. In a typical paternity proceeding, "the defendant's nonadmission of paternity represents a disavowal of any interest in" raising the child, and "the primary interest of the defendant is in avoiding the serious economic consequences that flow from a court order that establishes paternity

18

and its correlative obligation to provide support for the child." *Id.* at 580. The Court emphasized that "impos[ing] financial liability on the father will not trammel any pre-existing rights." *Id.* at 579–80. "In contrast, in a termination proceeding the State is seeking to destroy permanently all legal recognition of the parental relationship." *Id.* at 580. A "parent's desire for, and right to, the companionship, care, and custody of his or her children [is] 'an interest far more precious than any property right,'" and a state determination that "strip[s] . . . legal recognition" from the parental relationship "abrogates many aspects of this precious interest." *Id.*[6] Accordingly, *Rivera* demonstrates that avoiding financial obligations to one's child imposed by state law does not qualify as a fundamental right or liberty interest protected under the Due Process Clause.

Although no federal court has addressed the specific issue Plaintiff raises here, following the reasoning in *Rivera*, every state court to decide the question has held that a parent's decision not to fund a child's post-secondary education does not qualify as a "fundamental right" subject to heightened scrutiny. *See In re Marriage of Kohring*, 999 S.W.2d at 232–33 (concluding, based on *Rivera*, that because a state law requiring noncustodial parents to finance their children's post-secondary education "involves only [their] economic, rather than [their] associational interests with" their children, the law did not "impinge[] upon a fundamental right" and was not subject to heightened scrutiny); *LeClair v. LeClair*, 137 N.H. 213, 216, 221–22, 224 (1993) (concluding under the New Hampshire constitution, which adopts equal protection provisions that are coterminous with the Fourteenth Amendment, that a state court order requiring a noncustodial parent to finance his child's college education did not infringe upon a "fundamental" right because the parent "raise[d] primarily an economic issue"), *superseded by statute on other grounds as*

---

[6] In *McCurdle*, the Third Circuit clarified that "the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the *companionship* of his independent *adult* child." 352 F.3d at 830 (emphasis added).

*stated in State v. Lilley*, 171 N.H. 766, 773 (2019); *Childers v. Childers*, 89 Wash.2d 592, 604 (1978) (upholding a state law requiring noncustodial parents to finance their children's college education under rational basis review and declining to apply heightened scrutiny because there is no "fundamental right not to provide support for one's children past age 18").

*Stanley v. Illinois*, on which Plaintiff relies, does not support his position and in fact reinforces the distinction recognized in *Rivera*. 405 U.S. 645 (1972). *Stanley* struck down a state law that authorized the state to take custody of a child who was survived only by an unmarried father, regardless of whether the father was a "fit" parent, but that authorized the state to take custody of a child survived by a married father, a married mother, or an unmarried mother only if the parent was unfit. *Id.* at 649–50, 658–59. The Court held that this law violated the Equal Protection Clause because it infringed on a parent's interest in the "companionship, care, custody, and management of his or her children" without an adequate justification, as an unmarried father may be equally fit to raise his child as other parents. *Id.* at 651–53. *Stanley* had no trouble concluding that the law at issue implicated a parent's right to direct the "care, custody, and management" of his children because it deprived unmarried fathers of custody over their children entirely. *See id.* In contrast, the statutes at issue here do not affect a parent's custody over his children at all. They relate only to the narrower parental decision of whether to assist in financing a post-secondary educational program in which a child is already enrolled. *Stanley* did not hold that such a parental decision qualifies as a fundamental right protected under the Fourteenth Amendment.

Nor does any other Supreme Court decision concerning parental rights "to direct the education and upbringing of one's children," *id.* at 720, hold that the Due Process Clause protects the right Plaintiff seeks to assert. In *Pierce*, the Court struck down a law requiring children between

ages 8 and 16 to attend public school. 268 U.S. at 530–31. The law "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control" because it prevented parents from sending their children to a private school, which taught "subjects usually pursued in . . . public schools" in addition to "[s]ystematic religious instruction." 268 U.S. at 531–32, 534–35. Likewise, in *Meyer*, the Court struck down a law prohibiting instruction in any language other than English to children below a certain educational level in part because the law interfered "with the power of parents to control the education of their own." 262 U.S. at 396–97, 400–01, 403. Unlike the right Plaintiff asserts, both *Pierce* and *Meyer* concerned parental decisions regarding the substance of a minor child's education. Neither case held, nor intimated, that the Due Process Clause protects a parent's merely economic decision not to fund his child's post-secondary education when that parent has the financial wherewithal to do so.

Accordingly, the laws under challenge here do not infringe upon a "fundamental right" or liberty interest, and for the reasons discussed *supra*, neither do they implicate a suspect class. Rational basis review therefore applies to Plaintiff's claims under the Equal Protection and Due Process Clauses. *Heller*, 509 U.S. at 320; *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *City of Cleburne*, 473 U.S. at 440; *Heffner*, 745 F.3d at 79.

### 3. Application of Rational Basis Review

A law is constitutional under rational basis review if it bears a "rational relationship" to "some legitimate governmental purpose." *Heller*, 509 U.S. at 320; *Heffner*, 745 F.3d at 79. The challenged laws survive under this liberal standard.

First, the laws advance a "legitimate governmental purpose." *Heller*, 509 U.S. at 320. The laws advance the state's interest in promoting higher education among its youth, *see* ECF No. 39-1 at 31–32, an unquestionably legitimate purpose the state may pursue. *See, e.g.*, *Pedrick v.*

*Goodman*, 2008 WL 4949776, at *3 (N.J. Super. Ct. App. Div. Nov. 21, 2008) (recognizing that New Jersey follows a "public policy that advances the protection and support of children who strive to secure a college degree, regardless of a broken relationship with their parents"); *In re Marriage of Kohring*, 999 S.W.2d at 233 (concluding that "the state has a legitimate interest in securing higher education opportunities for children from broken homes"); *LeClair*, 137 N.H. at 225 (concluding that the state has a "legitimate interest[] [in] promoting higher education for its citizens"); *Childers*, 89 Wash.2d at 604 (noting that "the governmental interest at stake . . . extends well beyond children to our nation as a whole," as a "well-educated citizenry is one of the major goals of a democratic society"); *see also Aguilar v. Felton*, 473 U.S. 402, 415 (1985) (Powell, J., concurring), *overruled on other grounds by Agostini v. Felton*, 521 U.S. 203 (1997) ("The State has . . . a legitimate interest in facilitating education of the highest quality for all children within its boundaries . . . ."). Another governmental purpose Defendants assert—minimizing the disadvantages to children in broken homes, *see* ECF No. 39-1 at 32–38—is also legitimate. *See, e.g.*, *LeClair*, 137 N.H. at 224 (concluding that the "legitimate [s]tate interest served by" a post-majority support statute "is to ensure that children of divorced families are not deprived of educational opportunities solely because their families are no longer intact").

The laws are also "rationally related" to the legitimate purposes they serve. Defendants do not offer any evidence of the legislature's rationale in enacting the challenged laws, but they need not do so under rational basis review. *See, e.g.*, *Nordlinger*, 505 U.S. at 15 ("[T]he Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification."). A law withstands rational basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Commc's, Inc.*, 508

U.S. at 313. One plausible explanation for the laws under challenge here is that an otherwise financially capable parent may be less inclined to fund his child's post-secondary education following a divorce. As the New Jersey Supreme Court observed, "[t]he heightened economic concerns and animosity that may develop as part of the divorce process in all too many cases may influence a parent's viewpoint as to how he or she would have acted had the family remained together." *Gac v. Gac*, 186 N.J. 535, 545 (2006); *see also LeClair*, 137 N.H. at 224–25 (recognizing that "[w]hile financial support of the family unit may be an unquestioned responsibility in an intact home, such support decisions often become regulated by court order in a disputed divorce"). "[T]he legislature [therefore] could rationally conclude that absent judicial involvement, children of divorce may be less likely than children of intact families to receive college financial support from both of their parents." *See LeClair*, 137 N.H. at 225; *In re Marriage of McGinley*, 172 Or. App. at 729 ("[T]he legislature reasonably could believe that divorced parents are likely to have greater difficulty than are married parents in making joint decisions about financial support for their 18–to 21–year old children. As a consequence, there is a greater likelihood that children of divorced parents will receive less support for post-secondary education than will children of married parents."). And while neither Defendants nor the legislature adduced evidence in support of this theory, there is no such requirement under rational basis review, as "[t]he legitimate purpose 'may be based on rational speculation unsupported by evidence or empirical data.'" *Cabrera*, 921 F.3d at 404 (quoting *Beach Commc's, Inc.*, 508 U.S. at 313).

The fit between Defendants' legitimate governmental purposes and the challenged laws is sufficient to survive rational basis review. Divorced parents must only contribute to their children's post-secondary educational expenses following a court decision that accounts for several factors, including a parent's financial wherewithal. *Jacoby v. Jacoby*, 427 N.J. Super. 109, 122 (App. Div.

2012) ("[C]ourts faced with the question of setting child support for college students must assess all applicable facts and circumstances, weighing the factors set forth in N.J.S.A. 2A:34-23(a)."); *LeClair*, 237 N.H. at 225 (upholding state statute requiring divorced parents to finance their children's post-secondary education in part because the statute did not require a court "to order college expenses in all cases," but rather only in its "sound discretion . . . under the proper circumstances"). And although not all married parents finance their children's post-secondary education, rendering the fit between the State's purposes and the challenged laws imperfect, rational basis review does not require "'mathematical precision in the fit between justification and means.'" *Heffner*, 745 F.3d at 80 (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 639 (1993)); *McLeod*, 396 S.C. at 204–05 (concluding that imperfect fit between justification and means in law requiring divorced parents to finance their children's post-secondary education "does not detract from the [s]tate's interest in having college-educated citizens and attempting to alleviate the potential disadvantages placed upon children of divorced parents"). Applying the rational basis test "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Commc's, Inc.*, 508 U.S. at 313.

Although no federal court has decided whether laws requiring divorced parents to finance their children's post-secondary education violate rights to equal protection and due process, nearly every state court to address this issue has held, as I do here, that such laws withstand rational basis review. *See, e.g.*, *McLeod*, 396 S.C. at 658; *In re Marriage of Kohring*, 999 S.W.2d at 232–33; *LeClair*, 137 N.H. at 225; *Childers*, 89 Wash.2d at 601–06; *In re Marriage of McGinley*, 172 Or. App. at 734–35.

The Supreme Court of Pennsylvania's contrary decision, *see Curtis v. Kline*, 542 Pa. 249, 259–60 (1995), does not alter my conclusion. In *Kline*, the court held that a state statute requiring

24

only divorced parents to finance their children's college education violates the Equal Protection Clause. *Id.* But in identifying the relevant classes, the court focused on the differential treatment imposed on children of married versus unmarried parents, and it found no rational basis upon which to treat these groups differently. *Id.* at 260. *Kline* distinguished *LeClair* by noting that "[t]he discriminatory classification adopted by [the Pennsylvania] legislature is not focused on the parents but rather the children," and the court framed the inquiry as "whether similarly situated young adults, i.e.[,] those in need of financial assistance, may be treated differently." *Id.* Even accepting *Kline*'s dubious characterization of the relevant classes in that case, it has no application here. Plaintiff explicitly defines the relevant classes as married versus divorced parents, and his claim is based on the injury he incurred partially due to his divorce. *See, e.g.*, SAC p. 21 ¶¶ 2–3 (characterizing the relevant class as "fit noncustodial parents subject to a Post Majority Support Order"). He does not bring a claim on behalf of children in intact families whose parents decided not to finance their post-secondary education. *See Kline*, 542 Pa. at 264 n.5 (Montemuro, J., dissenting) (questioning whether the plaintiff would have standing to assert claims based on injuries to non-party children of married parents who could not receive financial support for college tuition under the challenged law).

Kline* is also unpersuasive because it failed to credit the rational connection between the legislature's purpose and the means it chose. The Pennsylvania statute was premised on the theory, supported by some evidence, that "non-custodial parents frequently became reluctant to provide financial support for any purpose, but are particularly determined to avoid the costs of a college education." *See Kline*, 542 Pa. at 262–63 (Montemuro, J., dissenting) (citing *Childers*, 89 Wash.2d at 575). Noncustodial parents may harbor such reluctance "because they lose concern for the child's welfare[] or out of animosity toward the custodial parent," *id.*, which are "'plausible

reasons' for [the legislature's] action" that courts must accept under rational basis review. *See Beach Commc's, Inc.*, 508 U.S. at 314 (quoting *U.S. Railroad Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980)); *see also id.* at 320 ("The assumptions underlying these rationales may be erroneous, but the very fact that they are 'arguable' is sufficient[] on rational basis review . . . ."). *Kline* rejected this rationale primarily because the statute omitted children of married parents who nevertheless refused to finance their children's post-secondary education. *See* 542 Pa. at 258–59. Yet, courts must uphold a statute under rational basis review even where there is an "imperfect fit between means and ends" that "'results in some inequality.'" *Heller*, 509 U.S. at 321 (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)). Because the court in *Kline* effectively "[sat] as a superlegislature" and impermissibly "judged the wisdom or desirability of policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines," *Heller*, 509 U.S. at 319 (quotations and citations omitted), I do not find *Kline* persuasive in these circumstances.

I am also not alone, as two state court decisions decided after *Kline* roundly rejected its reasoning. In *McLeod*, the Supreme Court of South Carolina upheld a state law requiring otherwise fit noncustodial parents to finance their children's college education. 396 S.C. at 658–59. Although *McLeod* did not discuss *Kline* explicitly, it rejected the reasoning in *Kline* for the same reasons discussed herein. Applying rational basis review, the Court concluded that South Carolina has "a strong interest" both "in the outcome of disputes where the welfare of [its] young citizens is at stake," as well as "in ensuring that [its] youth are educated such that they can become more productive members of our society." *Id.* at 657. *McLeod* held that the state law is rationally related to these interests because it is plausible that "'even well-intentioned parents, when deprived of the custody of their children, sometimes react by refusing to support them as they would if the family

unit had been preserved.'" *Id.* at 657–58 (quoting *In re Marriage of Vrban*, 293 N.W.2d 198, 202 (Iowa 1980)). *McLeod* acknowledged the point that *Kline* found dispositive: "not every married parent sends his children to college" and "not every divorced parent refuses to do so." *Id.* at 658; *see also Kline*, 542 Pa. at 258–59 (discussing possibility that married parent would refuse to finance post-secondary education for a child still living with that parent). But as *McLeod* explained, such a possibility "does not detract from the [s]tate's interest in . . . attempting to alleviate the potential disadvantages placed upon children of divorced parents." 396 S.C. at 658. And "[t]he tenants [*sic*] of rational basis review under equal protection do not require such exacting precision in the decision to create a classification." *Id.*; *see also Heffner*, 745 F.3d at 80 (concluding that a law may survive rational basis review under the Due Process Clause "even though it neither targets all applicable threats nor succeeds in preventing all of them").

For largely the same reasons, the Court of Appeals of Oregon explicitly rejected *Kline* in upholding an Oregon law requiring divorced parents to finance their children's post-secondary education in certain statutorily delineated circumstances. *See In re Marriage of McGinley*, 172 Or. App. at 727–28. As *McGinley* reasoned, "it is rational to believe that children from non-intact families will have more difficulty paying for their college education than will children from intact families, in part because of lack of support from divorced parents." *Id.* at 727. "[N]othing in . . . *Kline* convince[d]" the court in *McGinley* that the legislature's effort to alleviate this problem "is irrational." *Id.* at 727–28. Moreover, taken to its logical conclusion, the reasoning in *Kline* could upend the entire child support system that virtually "every state in the country" employs. *See id.* at 729 (recognizing that, as far as the court was aware, "every state in the country distinguishes between divorced parents and married parents with regard to state involvement in decisions about the financial support of their children"). *Id.* It "would be remarkable . . . to conclude" that "such a

difference in treatment" violates the guarantee of equal protection codified in most state constitutions as well as the Fourteenth Amendment. *Id.* As did *McLeod* and *McGinley*, I too decline to follow *Kline* down that path.

Accordingly, Plaintiff's claims in Counts One, Two, Three, and Four contending that the challenged laws violate the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment are dismissed.[7]

### D.    Supplemental Jurisdiction

In Counts Two and Three, Plaintiff asserts claims under Articles I and VIII of the New Jersey Constitution, which largely resemble the claims Plaintiff brings under the U.S. Constitution.

A district court has supplemental jurisdiction over "claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). The district court may decline to exercise supplemental jurisdiction when it "'has dismissed all claims over which it has original jurisdiction[,]'" *Kach*, 589 F.3d at 650 (quoting 28 U.S.C. § 1367(c)(3)), or when the plaintiff's "claim raises a novel or

---

[7] Plaintiff fashions his claims under the U.S. Constitution as both facial and as-applied challenges. *See* SAC p. 28 ¶ 1. "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). "On the other hand, '[a]n as-applied attack . . . does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Mitchell*, 652 F.3d at 405 (quoting *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir.2010)). Plaintiff does not allege any facts or otherwise explain why the challenged laws are unconstitutional as applied to him. Rather, based on the facts alleged, the SAC appears to challenge the statutes facially. Nevertheless, for the reasons set forth *supra*, Plaintiff is unable to show that the statutes violate his constitutional rights as applied, let alone that there are "'no set of circumstances exists under which [they] would be valid.'" *Mitchell*, 652 F.3d at 405 (quoting *Salerno*, 481 U.S. at 745).

complex issue of State law." 28 U.S.C. § 1367(c)(1). Such a decision "'is purely discretionary.'" *Bush v. City of Philadelphia*, 765 F. App'x 843, 847 (3d Cir. 2019) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). "That discretion, however, is not unbridled." *Kach*, 589 F.3d at 650. The district court must base its "decision ' . . . on considerations of 'judicial economy, convenience and fairness to the litigants.'" *Id.* (quoting *New Rock Asset Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1507 n. 11 (3d Cir.1996)). If the "district court decides not to exercise supplemental jurisdiction and . . . dismisses [the remaining] state-law claims," it must "do so without prejudice." *Id.*

Here, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under Articles I and VIII of the New Jersey Constitution. In this Opinion, I have dismissed the federal claims over which this Court has original jurisdiction. *Kach*, 589 F.3d at 650; 28 U.S.C. § 1367(c)(3). Further, as Defendants recognize, "New Jersey state courts have not directly decided the constitutionality of the post-majority support laws codified in N.J.S.A. 2A:34-23(a)(5) and N.J.S.A. 2A:17-56.67." *E.g.*, ECF No. 39-1 at 20. The New Jersey Supreme Court did announce a test applicable when determining whether to order parental "contribution[s] toward the cost of [their children's] higher education," *Newburgh v. Arrigo*, 88 N.J. 529, 543–45 (1982), possibly implying that the Court did not question the constitutionality of such an award, and the New Jersey Legislature "essentially approved" the *Newburgh* factors when it amended the support statute. *Kiken v. Kiken*, 149 N.J. 441, 449–50 (1997). But New Jersey courts have not yet squarely addressed the state constitutional issue Plaintiff raises. *See, e.g.*, *Gac*, 186 N.J. at 541, 547–48 (declining to address argument that "compel[ling] divorced parents, but not married parents, to pay for their children's college educations" violates the U.S. and New Jersey Constitutions because it was not properly raised on appeal). And the New Jersey constitutional provision that provides a

right to due process and equal protection, *see Greenberg v. Kimmelman*, 99 N.J. 552, 568 (1985) (noting that "article 1 safeguards values like those encompassed by the principles of due process and equal protection"), "is 'more expansive . . . than that of the United States Constitution . . . .'" *Planned Parenthood of Cent. N.J. v. Farmer*, 165 N.J. 609, 629 (2000). To allow New Jersey courts to resolve the issues of state law Plaintiff's claims present,[8] and because I have dismissed the claims over which this Court has original jurisdiction, I decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED**. Plaintiff's federal claims in Counts One, Two, Three, Four, and Five are dismissed with prejudice. Plaintiff's state-law claims in Counts Two and Three are dismissed without prejudice, and he may refile those claims in state court in accordance with 28 U.S.C. § 1367(d) and *Artis v. District of Columbia*, 138 S. Ct. 594 (2018).

Date: February 17, 2022                                        /s/ Freda L. Wolfson
                                                               Hon. Freda L. Wolfson
                                                               U.S. Chief District Judge

---

[8] Plaintiff does not explicitly bring any claims under state law other than those under Articles I and VIII of the New Jersey Constitution, as referenced herein. However, the SAC refers to the "New Jersey Civil Rights Act" and attaches a "Fact Sheet" from the New Jersey Department of Law and Public Safety discussing marital status and discrimination under the New Jersey Law Against Discrimination. SAC p.22 ¶ d and Ex. C. To the extent Plaintiff intended to assert claims under those state statutes in his SAC, I decline to exercise supplemental jurisdiction over those claims as well, and they are dismissed without prejudice.